Shirley and Richard LAMBOTTE,
Plaintiffs/Appellants,

v.

William BOWLING,
Defendant/Respondent.

No. 61860.

Missouri Court of Appeals,
Eastern District,
Division One.

April 6, 1993.

S. Lee Patton, Kirkwood, for plaintiffs, appellants.

Denis C. Burns, John B. Singleton, Godfrey, Vandover & Burns, St. Louis, for defendant, respondent.

REINHARD, Judge.

Plaintiffs appeal from the judgment of the trial court entered pursuant to a jury verdict for defendant in their cause of action seeking damages for personal injuries allegedly suffered following an automobile accident.[1] We affirm.

The accident occurred on May 26, 1987, near the intersection of Kingshighway and Highway 40 in St. Louis City. Plaintiff Shirley Lambotte was a passenger in a car, driven by Nancy Tuepker, which was rear-ended by defendant. The force of the impact and extent of Ms. Lambotte's injuries are the subject of much dispute. Ms. Lambotte testified that defendant's automobile hit her car "pretty hard". Defendant testified that his car was traveling three to five

---

1. Count I of plaintiffs' petition sought recovery for personal injuries suffered by Ms. Lambotte; Count II asserted her husband's claim of loss of consortium. The jury found in favor of defendant on both counts.

miles per hour at the time of the collision, and described the impact as a "tap". Plaintiffs presented evidence indicating that the vehicle was damaged. Defendant admits fault in causing the collision, but contends that there was no damage. He correctly asserts that plaintiffs must demonstrate the existence of compensable injuries in order to secure recovery.

Ms. Lambotte told defendant at the scene that she was "all right" and made no complaint of pain or injury. Defendant observed no visible damage to the vehicles; the police were not called. Ms. Lambotte proceeded to work but testified that she began to experience pain about an hour later and decided to consult a chiropractor. She visited Dr. Dennis Stull the next day, who conducted tests and began treatment. She remained under Dr. Stull's care and visited him on approximately 50 occasions, receiving traction and spinal manipulation. Dr. Stull took x-rays and diagnosed plaintiff as suffering from a degenerative osteoarthritic condition, which, in his opinion, had been aggravated by trauma from the accident. However, Dr. Stull stated under cross-examination that such a condition could have become symptomatic without trauma or injury.

In October, 1987, Ms. Lambotte sought the services of Dr. Martin McPhaul, a physician specializing in rehabilitation medicine. She complained of tenderness; Dr. McPhaul conducted an examination and attributed the tenderness to soft tissue injuries to the neck and shoulder area and lower back caused by the accident. Dr. McPhaul also noted the existence of a degenerative nerve disease, polyneuropathy, which he considered unrelated to the accident.

In July, 1988, Ms. Lambotte visited Dr. Karl Jacob, Jr., a neurosurgeon. Dr. Jacob conducted a variety of tests, including an MRI examination. Dr. Jacob interpreted the MRI test results to indicate the existence of a "bulging disc impinging on a nerve root." Dr. Jacob was unable to definitively state that the bulging disc was caused by the collision, but stated that it was most likely caused by that injury. Dr. Jacob also stated that Ms. Lambotte suffered from degenerative disc disease.

Dr. Robert Tatkow, an orthopedic surgeon, testified for the defense. He stated that he examined Ms. Lambotte on March 7, 1990, administered a battery of tests, and diagnosed her as suffering from peripheral neuropathy, a degenerative nerve disorder. Dr. Tatkow stated that this condition was the cause of any pain Ms. Lambotte suffered and was not related to trauma. He stated that he found no objective evidence to confirm Ms. Lambotte's complaints of pain, noting that she exhibited no muscle spasms or localized areas of discomfort and demonstrated a full range of motion during the examination.

Dr. Tatkow reviewed chiropractic x-rays from Ms. Lambotte's file and x-rays taken during his examination and stated "there is no evidence in any of these films of anything other than an old degenerative condition that has remained unchanged over these years." He stated he had reviewed Ms. Lambotte's medical records, including test results from her consultations with Drs. Stull, McPhaul, and Jacob, and had found no irregularity in her condition attributable to the collision. However, Dr. Tatkow did note incidents in Ms. Lambotte's prior medical history, including an enlarged spleen and liver, which could have been related to her peripheral neuropathy.

In their principal point on appeal, plaintiffs contend that the trial court abused its discretion in overruling their motion for a new trial, "because the verdict of the jury was against the weight of the credible evidence."

Unless there is an abuse of discretion, an appellate court may not rule on the weight of the evidence in a jury-tried case because this determination is within the exclusive province of the trial court.... When a motion for new trial has been denied, appellate review is limited to evidence which supports the trial court's ruling. The trial court is accorded wide discretion because it may take into consideration the credibility of the witnesses and weigh the evidence.

*White v. Otten,* 810 S.W.2d 704, 705–06 (Mo.App.1991) (citations omitted).

We find this case factually similar to *White.* There, as here, plaintiff contested the jury's finding that he had suffered no damages as a result of a collision with defendant's automobile. We found no abuse of discretion, reasoning:

> The jury heard evidence regarding plaintiff's health, both before and after the accident. The jury was free to believe that plaintiff's medical complaints were from earlier problems and not attributable to the accident. The jury could reject the testimony of plaintiff's chiropractor concerning plaintiff's subjective signs of injury, particularly in light of the several x-rays disclosing no objective signs of trauma.

*White,* 810 S.W.2d at 706.

 Here, the jury was free to believe that Ms. Lambotte's medical problems stemmed from a pre-existing degenerative nerve disorder and were not attributable to the collision. The jury could reject plaintiffs' medical testimony regarding Ms. Lambotte's subjective signs of injury; particularly, as in *White,* in light of Dr. Tatkow's testimony that the x-ray evidence indicated only the presence of a degenerative disease unrelated to trauma.

 Plaintiffs also assert that they are entitled to a new trial because of what they describe as "juror misconduct". They contend that there was an improper communication between the jury and the bailiff during its deliberation, "which caused [the jury] to return a verdict quickly". The jury began its deliberation at 4:08 p.m. on a Thursday. Plaintiffs asserted, by affidavits accompanying their motion for new trial, that after the jury had deliberated for about twenty minutes, it sent a question to the court asking whether "they were going to get paid for Friday if they stayed past 5:00 p.m." The bailiff, without consulting the court, responded that they would not be paid for the next day. The jury then deliberated for an additional twenty minutes before rendering its verdict.

The trial judge, in his memorandum and order overruling plaintiffs' motion, noted:

> [This] matter is confided to the discretion of the trial court. While the affidavits of plaintiffs on this issue are taken as true by this Court [pursuant to the parties' stipulation], the Court finds no prejudice warranting a new trial. The trial was of short duration; the issues were not complex (indeed, the only contested issue was whether plaintiff Shirley Lambotte in fact was injured in the accident); the verdict was not unanimous (10–2); the jury's verdict was hardly against the weight of the evidence; and the jury deliberated for an additional 20 minutes after the communication with the bailiff. Under all the circumstances, a new trial is not warranted by reason of the improper communication.

(footnote omitted).

 The granting of a new trial on grounds of juror misconduct is within the sound discretion of the trial court; the court's ruling will not be disturbed absent a showing of abuse of that discretion. *Green v. Lutheran Charities Ass'n,* 746 S.W.2d 154, 157 (Mo.App.1988). We find no abuse of discretion here.

Judgment affirmed.

AHRENS, P.J., and CRIST, J., concur.